[No. 4100-0-III.   Division Three.   June 30, 1981.]

RICHARD N. HAGENSEN, ET AL, *Respondents*, v. ALMA PETERSEN, *Appellant*.

*William A. McCormick* and *Sensney, Davis, McCormick & Schneider*, for appellant.

*Rickey C. Kimbrough, Kimbrough & Everett, Charles R. Cusack, Jr.,* and *Blair, Schaefer, Hutchison, Wynne, Pot-*

*ter & Horton,* for respondents.

RoE, J.—Defendant Mrs. Alma Petersen signed an earnest money agreement on June 6, 1979, on a form in use in Oregon. It provided she would sell her dairy farm to the plaintiffs Hagensen for $100,000, with $29,000 as a down payment and $71,000 on a 20–year contract at 9½ percent interest, payable at $700 per month. After signing, she refused to sell solely because the price was not as much as she later decided the farm was worth.

The trial court granted summary judgment for specific performance of the earnest money agreement. Our inquiry is limited to the interpretation and effectiveness of that agreement and only the correctness of the order granting summary judgment.[1]

It was held in *Hubbell v. Ward,* 40 Wn.2d 779, 246 P.2d 468 (1952), that an earnest money agreement "in so far as it looks to the preparation and execution of a future real–estate purchase contract upon which the minds of the parties have not met, is not sufficiently definite and certain and cannot be specifically enforced." *Hubbell v. Ward, supra* at 787. The earnest money agreement in *Hubbell* set forth the purchase price, the down payment, the monthly payment, the interest rate, and the purchasers' agreement to sign a contract for the balance. That is exactly what was done here. It did not reflect other terms of that contract. The court noted 13 matters material to the rights and obligations of the parties which could not be ascertained from the earnest money agreement: (1) time of transfer of title, (2) provisions for forfeiture, (3) risk of loss, (4) who is to carry insurance, (5) who is to pay taxes, (6) who is responsible for repair, (7) who pays utility charges, (8) the right of the purchaser to make capital improvements without consent of the seller, (9) the seller's protection against liens created by the purchaser, (10) the purchaser's right to

---

[1]In fairness to the trial court, this case was not submitted to it under the authority of *Hubbell v. Ward,* 40 Wn.2d 779, 246 P.2d 468 (1952).

remove furniture without the seller's permission, (11) the purchaser's right to use the building for other purposes, (12) time and place of monthly payments, and (13) whether the purchaser is an indemnitor of the seller against claims of third parties. *Hubbell v. Ward, supra* at 782–83. In a later case which followed *Hubbell,* the court stated: "Where the parties have not reached agreement, there is nothing for equity to enforce." *Haire v. Patterson,* 63 Wn.2d 282, 286, 386 P.2d 953 (1963).

The earnest money agreement signed by the Hagensens and Mrs. Petersen has many of the same defects as those found in *Hubbell.* The agreement does not refer to with specificity, nor is there attached, a copy of a standard form real estate contract, which is the standard practice in Washington after the ruling in *Hubbell.* Even though there was a reasonable inference from the earnest money agreement that the vendee would pay the taxes and insurance on the property because such were to be prorated on a calendar year basis, the contract did not definitely state the vendee would pay such expenses, or when. There are no provisions for the transfer of title or for forfeiture in case of default. The agreement does not state who bears the risk of loss, who is responsible for repair, or the protections afforded both the purchaser and the seller under a contract, nor does it state when monthly payments are to commence. It states title insurance will be furnished "in due course" without a definition of when that is. Although not all 13 items mentioned in *Hubbell* are missing from the earnest money agreement in the case at bench, we do not find that fatal in refusing to affirm the award of summary judgment granting specific performance.

Since the contract did not permit payments of more than $700 per month, neither can the Hagensens demand specific performance by tendering the entire contract price. In *Hubbell,* where the contract allowed payments of $200 *or more* per month, the court found the agreement could be enforced as the purchaser could pay the entire consideration at any time. *See also Haire v. Patterson, supra.*

The seller urges since there was a mortgage on the property, and it is not mentioned in the earnest money agreement, it cannot be determined whether the mortgage was an added cost to the purchasers and hence the sale price was indefinite. The earnest money agreement provided "Encumbrances to be discharged by seller may be paid . . . out of purchase money at date of closing." The seller also agreed to provide insurable, marketable title to the purchasers at her expense. It would thus be the duty of the seller under such conditions to satisfy the mortgage or any other encumbrances. In *Carpenter v. Folkerts,* 29 Wn. App. 73, 627 P.2d 559 (1981), specific performance of an option to purchase real estate was granted even where it was financially impossible for the seller to satisfy all encumbrances.

In *Hedges v. Hurd,* 47 Wn.2d 683, 289 P.2d 706 (1955), under similar facts, the court refused to grant specific performance of an earnest money agreement, but did not bar an action for damages against the seller for breach of the agreement. Since this is a summary judgment action, that issue is not before us.

Summary judgment is appropriate where the pleadings, depositions, admissions on file and any affidavits submitted by the moving party show there is no genuine issue as to any material fact and that the moving party is entitled to the judgment as a matter of law. CR 56(c); *Preston v. Duncan,* 55 Wn.2d 678, 682, 349 P.2d 605 (1960). Mrs. Petersen has argued to this court that there are material facts still at issue, and thus the summary judgment should not have been granted. The purchasers have argued these other terms mentioned here were understood and could be agreed upon by the parties. We express no opinion on that. We hold that summary judgment of specific performance was not a remedy available to the plaintiffs, and thus should not have been granted as a matter of law.

The earnest money agreement provides for attorney's fees to the prevailing party. That issue is not before us in this summary judgment action, since we do not decide who

may ultimately prevail.

The judgment of the trial court is reversed.

McINTURFF, C.J., and GREEN, J., concur.