[No. 8787–8–I.   Division One.   May 3, 1982.]

RODNEY C. Y. CHAN, *Respondent,* v. ANTONE
SMIDER, ET AL, *Appellants.*

*Adair, Kasperson, Petersen & Hennessey* and *Stanley Kasperson,* for appellants.

*Max Nicolai* and *Llewellyn S. Jordan,* for respondent.

CORBETT, J.—This is an appeal and cross appeal from a decree of specific performance for the sale of an apartment house.

The appellants, Antone and Odette Smider, purchased the apartment building on contract in 1973 for $170,000. In fall 1977, the respondent Rodney C. Y. Chan, a business-man residing in Hong Kong, visited Seattle to look for an apartment house in which to invest. He contacted a realtor,

David Meyers, Inc. Although the realty company did not have a formal listing of the apartment house bearing the Smiders' signatures, it did have specific information as to price and terms of sale. David Meyers contacted Mrs. Smider who directed him to Floyd Wikstrom, who had assisted the Smiders in tax and business affairs. After conferring with Wikstrom, Meyers prepared an earnest money receipt and agreement, which was presented to Wikstrom. The Smiders signed the agreement, dated October 25, 1977. It provided for a purchase price of $315,800 with a $75,000 cash down payment, and a balance payable at $1,935 per month, including interest at 8½ percent, over a period of 15 years. It also provided that the sellers agreed to pay a commission of 5 percent of the total sales price. The purchaser, Chan, deposited $2,500 earnest money. By letter dated November 3, 1977, the real estate broker informed the Smiders that the transaction had been placed in escrow. There followed an exchange of letters and memoranda in November and December 1977, and January 1978, reflecting a negotiated transaction proceeding towards closure. At the time of trial, the Smiders contended that because Wikstrom failed to explain the nature of the contract to them, and had presented it to them in a rush, they were unaware that they had signed a binding contract. They claimed that Mr. Smider, a native of Yugoslavia, had difficulty understanding English, although he has resided in the United States since 1969, and is a trained machinist and former draftsman. Mrs. Smider, a native of Chile, holds a master's degree in psychiatric social work from an American university and has resided in the United States since 1954. She has also taken real estate courses in Washington. Neither the closing officer nor David Meyers recalled the Smiders objecting to the validity of the earnest money receipt and agreement.

When the Smiders refused to close, Chan brought this action for specific performance of the earnest money receipt and agreement. After a trial, findings of fact and conclusions of law and a decree of specific performance were

entered on April 1, 1980. The court found that Chan was entitled to all rents received by the Smiders from January 1, 1978 to the time of transfer ($67,004.59), against which the Smiders were entitled to offset their expenses ($17,727.21) during that time period for utilities, taxes, improvements, and the like. Of the $73,290.56 down payment tendered into the court registry, the Smiders were held entitled to $24,013.18 (the amount of tender less rents plus offsets) and Chan to the balance of $49,277.42. In addition, the Smiders were held entitled to all of the interest ($7,026.96) earned on the down payment while it was held in interest–bearing accounts prior to being tendered into the court registry. The court also found that the real estate broker, David Meyers, Inc., was entitled to the balance of its commission, $13,290. The Smiders were ordered to execute a real estate contract under which the monthly payments would commence on April 1, 1980. The court retained jurisdiction for an accounting of 1980 rents and offsets.

After entry of the original decree, the Smiders retained new counsel and the trial court granted their motion to alter or amend the judgment. In the amended findings of fact and conclusions of law entered on April 29, 1980, the court found that Chan was entitled to $1,000 in reasonable attorneys' fees in connection with the belated motion to amend. The amended decree ordered the Smiders to execute a real estate contract under which the monthly payments began as of January 1, 1978, instead of April 1, 1980. The court found that Chan was entitled to all rents received by the Smiders from January 1, 1978, to the time of transfer with interest at 8½ percent, less the Smiders' expenses offset year by year, for a total net credit due Chan of $56,461.67. The court also credited the Smiders with a total of $59,271.96, representing $7,026.96 interest on the down payment and 27 monthly contract installments. Of the $73,290.56 down payment tendered into the court registry, the Smiders were held entitled to $56,461.06, as opposed to the earlier award of $24,013.18, and Chan was

held entitled to $16,829.50, as opposed to the earlier award of $49,277.42. Chan was directed to pay the sellers' charges arising from the escrow, including the $13,290 commission owed to Meyers. The court again retained jurisdiction for an accounting of 1980 rents and damage deposits. Sometime on or after May 12, 1980, the Smiders, with Chan's approval, drew down the $56,461.06 from the court registry.

Chan moves to dismiss the Smiders' appeal, claiming that under the "acceptance of benefits doctrine", the Smiders have waived their right to appeal.

RAP 2.5(b) provides, in pertinent part:

(1) *Decision Subject to Modification.* A party may accept the benefits of a trial court decision without losing the right to obtain review of that decision only (i) if the decision is one which is subject to modification by the court making the decision or (ii) if the party gives security as provided in subsection (b)(2).

(2) *Other Decisions—Security.* If a party gives adequate security to make restitution if the decision is reversed or modified, a party may accept the benefits of the decision without losing the right to obtain review of that decision. The trial court making the decision shall fix the amount and type of security to be given by the party accepting the benefits.

■ Very few Washington cases deal with this doctrine, which was first recognized in *Lyons v. Bain,* 1 Wash. Terr. 482, 483–84 (1875). *See, e.g., Murray v. Murray,* 38 Wn.2d 269, 273–74, 229 P.2d 309 (1951); *Potter v. Potter,* 46 Wn.2d 526, 527, 282 P.2d 1052 (1955). The reason why an appellant accepting the benefits of the trial court's decision waives the right to appeal is because the appellate court might rule that the appellant is not entitled to those benefits. 4 Am. Jur. 2d *Appeal and Error* § 251 (1962). That would not be presented in this case. To secure return of the money that the Smiders withdrew from the court registry, Chan has the apartment building of substantially greater value. For that reason, the motion to dismiss the appeal is denied.

■ The appeal by the Smiders is primarily factual, error

being assigned to a number of the findings. Our review of the entire record discloses substantial evidence that Chan proved he was entitled to specific performance by clear, cogent and convincing evidence. *See In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973). We will not substitute our judgment for that of the trial court which had the witnesses before it. *Holland v. Boeing Co.,* 90 Wn.2d 384, 391, 583 P.2d 621 (1978).

■ The Smiders contend that because Chan was buying the property as an investment, he could have been made whole by an award of money damages and, therefore, specific performance was not an appropriate remedy. An earnest money receipt will support an action for specific performance. *Kreger v. Hall,* 70 Wn.2d 1002, 1008, 425 P.2d 638 (1967); *Hubbell v. Ward,* 40 Wn.2d 779, 787–88, 246 P.2d 468 (1952). Specific performance is not a matter of right in equity, but a remedy which rests in the sound discretion of the trial court. *Carpenter v. Folkerts,* 29 Wn. App. 73, 76, 627 P.2d 559 (1981); *Streater v. White,* 26 Wn. App. 430, 432–33, 613 P.2d 187 (1980). Because Chan was interested in the property as an investment does not mean that he had an adequate remedy available at law. The trial court did not abuse its discretion in granting his request for specific performance.

■ The Smiders object to the assessment of attorneys' fees against them in connection with revision of the original decree. They do not object to the amount, but to the assessment. Their motion to alter or amend judgment was based primarily on the trial court's failure to rule on the issue of whether they were entitled to interest on the unpaid balance of the purchase price from the original date of closing. This issue was not addressed in the Smiders' trial memorandum or in their motion for new trial. The trial court did not abuse its discretion in imposing terms.

The Smiders also contend that the trial court's finding that the real estate broker was entitled to the balance of its commission was improper because the broker was no longer a party to the action at the time of the decree. The finding

was proper, however, because the earnest money receipt and agreement, which was specifically enforced by the court, contained a provision providing for payment of the commission, which would have normally been paid from the escrow.

The Smiders also assign error to the allowance of 8½ percent interest on rents collected by them and credited to Chan. They claim that the interest rate should have been 6 percent, pursuant to former RCW 19.52.010, and not compounded. The trial court chose 8½ percent because it was the same interest rate at which Chan was to pay the Smiders. This is in accordance with the general rule that a court of equity will attempt to put both parties in the position in which they would have been had the transaction closed pursuant to the original agreement. We do not find this to be an abuse of the court's equitable power. Compounding of the interest was not brought to the attention of the trial court. We will, therefore, not consider it on review. *Herberg v. Swartz*, 89 Wn.2d 916, 925, 578 P.2d 17 (1978).

In his cross appeal, Chan assigns error to the amended decree's commencement of his monthly contract payments as of January 1, 1978, rather than April 1, 1980. This change made Chan accountable for interest on the unpaid purchase price from the originally scheduled closing date. Chan acknowledges that generally a decree of specific performance should place the parties, as far as possible, in the condition in which they would have been if the contract had been duly performed at the time the conveyance should have been made. *See Northwest Television Club, Inc. v. Gross Seattle, Inc.*, 96 Wn.2d 973, 984, 634 P.2d 837, 640 P.2d 710 (1981); 81A C.J.S. *Specific Performance* § 191(a) (1977). He urges an exception to the general rule, contending that where the seller remains in possession and willfully refuses to perform, the seller should not be allowed to profit from his wrong. *See* 71 Am. Jur. 2d *Specific Performance* § 219 (1973); Annot., 7 A.L.R.2d 1204, 1218 (1949). To utilize this exception, however, the purchaser must elect to claim a remission of interest as his measure of

compensation and waive his right to the rents. *Id.* Chan has consistently claimed a right to the rents collected by the Smiders during the period of delay and he received full credit for those rents, including 8½ percent interest. The trial court did not abuse its equitable discretion in this regard.

Chan also assigns error to the Smiders being allowed the $7,026.96 interest accrued on the down payment. He contends he should have received this sum because of the Smiders' willful refusal to perform their obligations. The trial court held that the Smiders were entitled to this interest because the money was being held for their benefit. We do not find this to be an abuse of discretion.

■ Chan next assigns error to that portion of the findings and conclusions which permits the Smiders to offset their expenses, pointing to authority in other jurisdictions which would deny this offset because of a violation of the clean hands doctrine. The trial court in this case did not find a violation of the clean hands doctrine. If the purchaser claims rents during the period of delay, then the vendor is entitled to deduct the ordinary expenses that were paid during that period, according to the general rule as cited in 71 Am. Jur. 2d *Specific Performance* § 220 (1973). Therefore, the trial court did not abuse its equitable discretion in this regard.

■ Chan next contends that the trial court erred in denying a reasonable attorneys' fee in connection with his action for specific performance. Attorneys' fees are not awarded in Washington in absence of a contract, statute, or recognized ground of equity. *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 797–98, 557 P.2d 342 (1976). The earnest money agreement here did not contain an attorneys' fee provision but the real estate contract did. The trial court denied Chan a reasonable attorneys' fee because it was the earnest money agreement that was specifically enforced, not the real estate contract. We find no error in this regard.

■ Chan claimed $853.20 as costs for taking two depositions each of Mr. and Mrs. Smider, and one deposition of

their agent, Wikstrom. The trial court was requested to read all of these depositions in their entirety, and the record indicates that it did so. The depositions were not used for the sole purpose of impeachment, but also as substantive evidence. Under such circumstances, it is not material that the deponents testified at the trial. *See Tombari v. Blankenship–Dixon Co.*, 19 Wn. App. 145, 150, 574 P.2d 401 (1978) (no testimony taken at trial, costs allowed); *Gearheart v. Shelton*, 23 Wn. App. 292, 297, 595 P.2d 67 (1979) (summary judgment, costs allowed). The plaintiff Chan was entitled to his costs for these depositions and it was error for the trial court to refuse to tax them as costs against the appellants.

The decree of specific performance is affirmed. The cause is remanded solely for modification of the assessment of costs.

SWANSON and RINGOLD, JJ., concur.