[No. 59573-9.   En Banc.   June 24, 1993.]

MICHAEL KRUSE, ET AL, *Respondents*, v. FRED HEMP,
ET AL, *Petitioners*.

*Frits Knowles,* by *James W. Frits,* for petitioners.

*Brett & Daugert,* by *Larry Daugert,* for respondents.

GUY, J. — Petitioners Fred and Emma Hemp (Hemp) challenge a Court of Appeals decision holding that they waived their right to appeal the trial court's partial grant of summary judgment in favor of respondents Michael and Kay Kruse (Kruse) by accepting the benefits of that decision. We reverse and remand for further proceedings.

In April 1985, the parties executed a 5-year lease agreement for the premises located at 1611 North State Street, Bellingham, Washington. Kruse operates the Bellingham

Chiropractic Center, Inc., P.S. (BCC, Inc.) at that location. The lease listed Hemp as lessor and BCC, Inc., as lessee.

The lease agreement contained an option to purchase, which reads as follows:

11. TERMS OF OPTION.

In consideration of Ten Dollars ($10.00), Lessee or its assigns is granted an option to purchase the demised premises at any time within six (6) months of the termination of this Lease. The option is exercisable by written notice to the Lessors, either delivered personally or by certified mail. Lessee agrees that the option monies are absolutely non-refundable in the event that Lessee fails to elect to exercise this option.

   (a) Purchase Price: The purchase price of the property according to this option shall be Two Hundred Sixty Five Thousand Dollars ($265,000.00).

   (b) Payment: At the time this option is exercised, Lessee shall pay to Lessors the sum of Ten Thousand Dollars ($10,000.00) as a down payment. The balance of the purchase shall be paid as follows:

Lessee shall execute a Real Estate Contract in the amount of Two Hundred Fifty Five Thousand Dollars ($255,000.00), which obligation shall bear interest at a rate computed as follows:

   Twelve percent per annum, plus the excess if any, of the Seafirst prime rate over fourteen percent; or twelve percent less the amount, if any, that Seafirst prime rate is under ten percent. Such interest rate shall be adjusted semiannually. The monthly payments shall amortize the liability over twenty five (25) years, but shall not exceed Three Thousand Five Hundred Dollars ($3500.00).

   (c) Closing: Closing shall occur within thirty (30) days of Lessee's exercise of this option to purchase, but not prior to April 1, 1990. Usual and customary closing costs shall be borne by each party in accordance with standard real estate practice.

Clerk's Papers, at 131. The lease agreement provided the street address of the property at issue, but did not describe the property by lot number, block number, and addition. Through an oversight, the legal description of the property was not attached to the lease agreement.

In March 1990, BCC, Inc., exercised the option to purchase, and subsequently assigned its rights under that option to Kruse. As optionee, Kruse tendered a real estate contract to

Hemp, who refused to execute the contract because it failed to recognize an easement over the property at issue (lot B) in favor of an adjacent lot (lot C) owned by Hemp.

Kruse filed suit in May 1990, seeking a decree of specific performance ordering Hemp to execute the real estate contract and an award of reasonable attorney fees pursuant to a provision of the lease agreement, which reads:

> In the event suit shall be brought regarding the performance of the terms and provisions of this Agreement, . . . then the prevailing party shall be entitled to reasonable attorney's fees . . ..

Clerk's Papers, at 134.

Hemp answered the complaint and moved for summary judgment on grounds the indefiniteness of the option contract rendered specific performance inappropriate and, alternatively, requesting the court to declare valid an easement over lot B in favor of lot C.

Kruse filed a cross motion for summary judgment, arguing on grounds of partial performance and estoppel that the failure to include a legal description of the property did not render the option contract void. In addition, Kruse contended Hemp may be ordered to execute a real estate contract to which the parties did not previously agree because the Limited Practice Board has approved only one real estate contract form, all of the terms of which favor Hemp. *See generally* APR 12. Finally, Kruse argued the requested easement was unwarranted because Kruse had no notice of the easement prior to signing the lease and the easement was not necessary for access to lot C.

The trial court granted partial summary judgment in favor of Kruse, ordering Hemp to sign the tendered real estate contract, and the trial court awarded partial summary judgment in favor of Hemp, granting an easement against lot B in favor of lot C, State Street Short Plat, Bellingham, Washington. The trial court denied the requests of both parties for reasonable attorney fees.

In July 1990, pursuant to the court's order, Hemp executed the real estate contract, which reflected the easement

in favor of lot C. Kruse subsequently appealed the trial court's grant of an easement in favor of Hemp and the trial court's denial of attorney fees. Hemp then cross-appealed, arguing specific performance did not constitute an appropriate remedy and requesting attorney fees and costs.

In an unpublished opinion, the Court of Appeals reversed in part and remanded for further proceedings on the easement issue. *Kruse v. Hemp*, cause 26842-2-I (Apr. 13, 1992), slip op. at 1, 8. The Court of Appeals held, by retaining the $10,000 down payment and the subsequent monthly payments, Hemp accepted the benefits of the trial court's decision and waived the right to appeal the specific enforcement of the option contract. *Kruse*, slip op. at 5. On the other hand, the court held Kruse had not waived the right to appeal because Kruse had complied with RAP 2.5(b) by procuring an order from the trial court waiving the security requirement. *Kruse*, slip op. at 4.

The Court of Appeals further determined that Kruse had no constructive or actual notice of the disputed easement at the time the lease was executed, and that a genuine issue of material fact existed, which precluded summary judgment and thus required remand, regarding whether lot C would be landlocked without the easement. *Kruse*, slip op. at 7-8. Finally, the court found Kruse to be the sole prevailing party for purposes of awarding attorney fees because the easement issue constituted a matter outside the provisions of the lease agreement. *Kruse*, slip op. at 8-9. As a consequence, the Court of Appeals held Kruse was entitled to reasonable attorney fees at trial and on appeal. *Kruse*, slip op. at 9.

Hemp petitioned this court for review, presenting only the appeal waiver issue. Hemp does not contest the Court of Appeals ruling on the easement issue and did not renew the substantive grounds for assigning error to the trial court's order of specific performance. Likewise, Kruse did not address the substantive issues, arguing only that Hemp waived the right to appeal and requesting attorney fees for responding to Hemp's petition for review.

## I

█ The Court of Appeals sua sponte determined Hemp waived the right to appeal by violating RAP 2.5(b), which provides in part:

(1) *Generally.* A party may accept the benefits of a trial court decision without losing the right to obtain review of that decision only (i) if the decision is one which is subject to modification by the court making the decision or (ii) if the party gives security as provided in subsection (b)(2) or (iii) if, regardless of the result of the review, the party will be entitled to at least the benefits of the trial court decision.

(2) *Security.* If a party gives adequate security to make restitution if the decision is reversed or modified, a party may accept the benefits of the decision without losing the right to obtain review of that decision. The trial court making the decision shall fix the amount and type of security to be given by the party accepting the benefits.

The primary purpose of RAP 2.5(b) is "to ensure that a party seeking review will be able to make restitution if a decision is reversed or modified on appeal." *Scott v. Cascade Structures*, 100 Wn.2d 537, 541, 673 P.2d 179 (1983) (citing Comment, RAP 2.5(b)(2), 86 Wn.2d 1152-53 (1976)).

In the case before us, none of the three scenarios outlined in RAP 2.5(b)(1) apply; however, this case falls within an additional exception first identified by the Court of Appeals in *Chan v. Smider*, 31 Wn. App. 730, 644 P.2d 727 (1982). In *Chan*, the trial court specifically enforced the sale of an apartment house. Pursuant to the trial court's decree, the sellers executed a real estate contract and the buyer deposited the purchase money in the court registry. *Chan*, 31 Wn. App. at 733-34. Following an accounting of rents and offsets, the sellers withdrew their share of the amount deposited in the court registry. *Chan*, 31 Wn. App. at 734.

The sellers subsequently appealed the trial court's award of specific performance. The buyer moved to dismiss the appeal on grounds the sellers had waived their right to appeal by accepting the benefits of the trial court's decision, *i.e.*, by withdrawing funds from the court registry. The Court of Appeals, however, held the sellers did not waive their right to appeal because, "[t]o secure return of the money that

the [sellers] withdrew from the court registry, [the buyer] has the apartment building of substantially greater value." *Chan*, 31 Wn. App. at 734.

The case before us presents a similar situation. Hemp received a $10,000 down payment. In addition, Hemp retained subsequent monthly payments, the total amount of which the record does not reflect; however, if successful on appeal, Hemp presumably would be entitled to a portion of that amount as reasonable rental. In return, Kruse took possession and title to the property at issue, which is allegedly worth $265,000. Thus, Kruse has adequate security to ensure restitution of the amount paid to Hemp in the event the grant of specific performance is reversed. Considering the purpose of RAP 2.5(b), we find the Court of Appeals erred in dismissing Hemp's cross appeal.

## II

Under RAP 13.7(b), our review is normally limited to the issues raised in the petition for review and the answer. This court, however, has "the authority to determine whether a matter is properly before it, and to perform all acts necessary or appropriate to secure the fair and orderly review of a case." RAP 7.3. In addition, the court may waive the Rules of Appellate Procedure when necessary to "serve the ends of justice". RAP 1.2(c).

The parties have raised only the appeal waiver and attorney fees issues. Hemp requests that we remand the matter to the Court of Appeals for consideration of Hemp's substantive claim. We find that efficiency will be served and further appeals curtailed by this court's resolution of the specific performance issue.

In their briefs to the Court of Appeals, the parties raised *inter alia* two issues: (1) whether the terms stated in the option contract were sufficient to justify specific performance; and (2) whether the option contract, which failed to include a legal description of the property, was unenforceable because it violated the statute of frauds. The Court of Appeals declined to address the merits of these issues.

■ In reviewing a summary judgment order, an appellate court evaluates the matter de novo, performing the same inquiry as the trial court. *Ski Acres, Inc. v. Kittitas Cy.*, 118 Wn.2d 852, 854, 827 P.2d 1000 (1992) (citing *Herron v. Tribune Pub'g Co.*, 108 Wn.2d 162, 169, 736 P.2d 249 (1987)). A court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. CR 56(c). The trial court evidently determined no genuine issues of material fact exist, and the parties do not dispute this finding.

■ A contract to enter into a future contract (*i.e.*, an option contract) must specify all of the material and essential terms of the future contract before a court may order specific performance. *Hubbell v. Ward*, 40 Wn.2d 779, 785, 246 P.2d 468 (1952). When specific performance is sought, rather than legal damages, a higher standard of proof must be met: "clear and unequivocal" evidence that "leaves no doubt as to the terms, character, and existence of the contract." *Powers v. Hastings*, 93 Wn.2d 709, 717, 713, 612 P.2d 371 (1980) (quoting *Miller v. McCamish*, 78 Wn.2d 821, 829, 479 P.2d 919 (1971)).

In *Hubbell*, this court outlined 13 material terms of a real estate contract: (a) time and manner for transferring title; (b) procedure for declaring forfeiture; (c) allocation of risk with respect to damage or destruction; (d) insurance provisions; (e) responsibility for: (i) taxes, (ii) repairs, and (iii) water and utilities; (f) restrictions, if any, on: (i) capital improvements, (ii) liens, (iii) removal or replacement of personal property, and (iv) types of use; (g) time and place for monthly payments; and (h) indemnification provisions. *Hubbell*, 40 Wn.2d at 782-83. In that case, we refused to specifically enforce an option to purchase property on an installment basis because the terms of the real estate contract were too indefinite.[1] We concluded:

> that the agreement here, in so far as it looks to the preparation and execution of a future real-estate purchase contract

---

[1] Although in *Hubbell v. Ward*, 40 Wn.2d 779, 246 P.2d 468 (1952) we declined to specifically enforce the real estate purchase on an installment basis, we

upon which the minds of the parties have not met, is not sufficiently definite and certain and cannot be specifically enforced.

*Hubbell*, 40 Wn.2d at 787. Based on *Hubbell*, the standard practice in Washington is to attach, to an option agreement, a copy of a real estate contract form on which the parties have agreed. *Hagensen v. Petersen*, 29 Wn. App. 721, 723, 630 P.2d 1374 (1981).

In the case before us, the parties did not refer to or attach an agreed upon real estate contract form, and the option itself did not address the terms necessary under *Hubbell* for specific performance of a real estate sale. No "meeting of the minds" occurred as to material and essential terms, and thus, the trial court's grant of specific performance is erroneous.

■ Kruse argues the failure to identify a contract form does not defeat specific performance because the Limited Practice Board has approved only one real estate contract form and the terms of that form favor Hemp. The relevance of this assertion is unclear considering the purpose of the Limited Practice Board is to "authorize certain *lay persons* to select, prepare and complete legal documents incident to the closing of real estate and personal property transactions". (Italics ours.) APR 12(a). Presumably, the parties

---

nevertheless ordered conveyance of the property provided the purchasers paid the full price within 30 days of the judgment. *Hubbell*, 40 Wn.2d at 788. In that case, the option contract allowed the purchaser "to pay the balance of the consideration in cash at any time", and we specifically enforced a "cash sale". *Hubbell*, 40 Wn.2d at 788; *cf. Duprey v. Donahoe*, 52 Wn.2d 129, 134, 323 P.2d 903 (1958) ("A cash sale has been defined as 'one conditioned on payment concurrent with delivery of the deed.' ") (quoting *Hecketsweiler v. Parrett*, 185 Or. 46, 51, 200 P.2d 971 (1948)). For purposes of specific performance, we distinguish between cash sales and installment purchases. *See Valley Garage, Inc. v. Nyseth*, 4 Wn. App. 316, 318, 481 P.2d 17 (1971) ("Although the parties could not be ordered to prepare and execute a real estate purchase contract (since this would require a further meeting of the minds), the contract contains the essential elements of a cash sale. It contains a description of the property subject to sale and a method for the determination of a price which may be specifically enforced."). In the case before us, the parties precluded the possibility of a cash sale by establishing a limit on the amount of a monthly payment (*i.e.*, $3,500) and making no specific provision for a cash sale.

could have requested that an attorney draft a different real estate contract form and attach an unexecuted copy to the lease agreement. As this court observed in *Hubbell*:

> We are unable to determine that there is any standard form of such contract or, if there be such, what its provisions are. Real-estate purchase contracts differ in their provisions depending upon the nature of the property involved and the individual requirements of the parties thereto.

*Hubbell*, 40 Wn.2d at 782. Hence, although the terms of the contract approved by the Limited Practice Board may favor Hemp, specific performance is not an appropriate remedy because a "meeting of the minds" as to the terms of that contract did not previously occur.

Kruse makes passing reference to the doctrine of partial performance in both the reply brief to the Court of Appeals and the memorandum in support of summary judgment submitted to the trial court. Kruse cites *Paullus v. Fowler*, 59 Wn.2d 204, 367 P.2d 130 (1961) for the proposition that *Hubbell* does not apply when an option references a real estate contract and partial performance has occurred. *Paullus* does not support Kruse's assertion. In *Paullus*, we held the lease agreement, which contained an option to purchase, had all of the elements of a valid contract, despite uncertainties regarding the date that payments should commence and whether the stated payment amount included interest. *Paullus*, 59 Wn.2d at 213. In *Paullus*, the parties executed a contract containing the necessary material and essential terms to warrant specific performance. The uncertainties arose from the ambiguous language used in drafting the contract, *e.g.*, whether $300 per month "with interest" meant the interest was included in or in addition to the stated amount. *Paullus*, 59 Wn.2d at 214. *Paullus* does not limit *Hubbell* or address the part performance doctrine.

The doctrine of partial performance exists as a means of removing an oral contract for the lease or sale of real property from the statute of frauds. The doctrine requires at least two of the following elements:

> (1) delivery and assumption of actual and exclusive possession; (2) payment or tender of consideration; and (3) the making of

permanent, substantial and valuable improvements, referable to the contract.

*Powers v. Hastings*, 93 Wn.2d 709, 717, 612 P.2d 371 (1980). The part performance doctrine also applies to written agreements failing to satisfy the statute of frauds. 2 A. Corbin, *Contracts* § 420, at 452-53 (1950) ("Being sufficient to enable the plaintiff to prove all the terms of an oral contract, it is necessarily sufficient to allow the use of oral testimony to supplement an existing memorandum that is deficient in some material respect.").

In this case, the doctrine of partial performance does not support the grant of summary judgment in Kruse's favor. The parties precluded a cash sale, and specific performance of an installment purchase would be inappropriate because the parties never agreed upon the material and essential terms. Kruse simply cannot use the part performance doctrine to establish terms upon which the parties never — at least verbally — agreed.

We therefore hold specific performance was inappropriately granted. Given our disposition of the specific performance issue, we need not address the property description or easement issues.

### III

Having resolved the issue of specific performance in Hemp's favor, and thereby finding Hemp the prevailing party as contemplated in the attorney fee provision of the lease agreement, we remand for the trial court to perform an accounting and to determine the appropriate attorney fee award.

Reversed and remanded.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.