Kennedy, J.
Shortly after Thomas Svendgard obtained his commercial driver’s license by passing the skills test administered by a third party tester who was on contract with the Department of Licensing, he was randomly selected for a retest in a Department program designed to audit third party testers. Department employee Ismael Anaya denied Svendgard’s request to postpone the retest due to a back injury. After Svendgard failed to appear for the retest, the Department cancelled his commercial driver’s license, and later cancelled his personal driver’s license as well. Svendgard and his wife filed suit against the State of Washington, the Department of Licensing, and Anaya in his official and individual capacities, alleging (1) disability discrimination under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, and the Ameri *665 cans with Disabilities Act (ADA), (2) denial of due process, (3) violations of Svendgard’s civil rights, (4) retaliation under WLAD, and (5) loss of consortium.
Svendgard appeals the jury’s verdict in favor of the defendants, arguing, inter alia, that the trial court erroneously instructed the jury on the WLAD and ADA claims. We reverse and remand for a new trial on these claims, in that the jury instructions did not permit Svendgard to argue his legally viable theory of the case. Svendgard also appeals the trial court’s grant of summary judgment to the defendants on his due process and civil rights claims. We reinstate Svendgard’s due process claim, but affirm the trial court’s dismissal of the civil rights claim. We reject the defendants’ cross appeal.
FACTS
Applicants for a commercial driver’s license in Washington must pass a knowledge examination administered by the Department of Licensing and a skills test that may be administered by the Department or by an authorized third party tester. In an effort to ensure that third party testers under contract with the Department of Licensing were administering skills tests in compliance with federal regulations, the Department began a random retesting program in which 10 percent of the most recently passed commercial license holders were required to retake the skills test.
Thomas Svendgard obtained his commercial driver’s license in December 1997. His skills test was administered by a third party tester. In April 1998, the Department of Licensing sent Svendgard a letter notifying him that he had been selected for random retesting of his commercial driving skills and that “[flailure to schedule and/or appear for this re-test will result in the cancellation of your commercial driving privileges.” Report of Proceedings (June 25, 2002) (Anaya) at 78-79. Svendgard called the Department and spoke with Ismael Anaya, the director of the Department’s commercial driving section. Angered by what he felt was an *666 inadequate explanation for the retesting, Svendgard yelled that he would not submit to the retesting and hung up on Anaya. After speaking to his wife, Svendgard calmed down, called Anaya back, and scheduled an appointment to take the retest on May 22, 1998.
On May 1, 1998, Svendgard injured his back while at work, leading his doctor to place restrictions on his work. Svendgard then called Anaya and informed him of the injury and work restrictions, asked to reschedule the retest, and provided telephone numbers for his employer and doctor. After contacting Svendgard’s employer, but not his doctor, Anaya called Svendgard back and told him that if he did not appear for the scheduled retest, his commercial driver’s license would be cancelled. According to Anaya, during the call, Svendgard was upset and indicated that his back injury prevented him from driving even a car. Based on this statement, Anaya completed and sent a “DLE-5” form to the Department’s medical department, which in turn sent a letter to Svendgard requiring him to appear at a licensing office to demonstrate that he could safely operate his car.
After speaking with Anaya again, Svendgard called Lynda Henriksen, one of Anaya’s supervisors, complained about Anaya, explained his back injury, and requested time to heal before taking the retest. According to Svendgard, Henriksen said it would be too expensive for the Department of Licensing to accommodate his request and stated that if he failed to appear for the scheduled retest, his commercial driver’s license would be cancelled.
Svendgard did not appear for the retesting and the Department cancelled his commercial driver’s license. He also did not appear at a licensing office to demonstrate that he could safely operate his car and the Department then cancelled his personal driver’s license, as well.
Svendgard and his wife filed suit against the Department of Licensing, the State of Washington, and Anaya, alleging (1) disability discrimination under the Washington Law Against Discrimination (WLAD) and the Americans with *667 Disabilities Act of 1990 (ADA), (2) denial of due process, (3) violations of Svendgard’s civil rights, (4) retaliation under WLAD, and (5) loss of consortium. The trial court dismissed the due process and § 1983 claims on summary judgment, and the jury found for the defendants on the remaining claims.
ANALYSIS
Jury Instructions
 Svendgard first contends that the trial court’s instructions to the jury prevented him from arguing his case. We review jury instructions for abuse of discretion. Martini v. Boeing Co., 88 Wn. App. 442, 468, 945 P.2d 248 (1997), aff’d, 137 Wn.2d 357, 971 P.2d 45 (1999). There is no abuse of discretion where the instructions (1) permit the parties to argue their theories of the case; (2) are not misleading; and (3) when read as a whole, properly inform the jury of the applicable law. Hue v. Farmboy Spray Co., 127 Wn.2d 67, 92, 896 P.2d 682 (1995).
Svendgard contends that the jury instructions for his disability claims, under both the WLAD and the ADA, prevented him from arguing his theory of the case. The record supports this contention.
Instruction 12, regarding the WLAD claim, provides in pertinent part:
In order to prevail on their claim for the unfair practice of discrimination on the basis of a disability in a place of public accommodation, the plaintiffs must prove each of the following facts by a preponderance of the evidence:
(a) That plaintiff Thomas Svendgard had a “disability”;
(b) That the Department of Licensing is a “place of public accommodation”;
(c) That the Department of Licensing was aware of Mr. Svendgard’s disability;
(d) That Mr. Svendgard was able to meet the essential requirements to qualify for a commercial driver’s license; and
*668 (e) That the Department of Licensing failed to reasonably accommodate Mr. Svendgard’s disability.
Clerk’s Papers at 454 (emphasis added).
Instruction 18 required the jury to determine whether Svendgard was a “qualified individual” under the ADA and provides in pertinent part:

There is no requirement that the Department of Licensing must license someone who cannot meet the essential requirements to qualify for a license.

In order to prove that Mr. Svendgard was a “qualified individual,” the Plaintiffs must prove each of the following facts by a preponderance of the evidence:
(1) That Plaintiff Thomas Svendgard informed Defendant Department of Licensing of the substantial limitations arising out of his disability;
(2) That Plaintiff Thomas Svendgard identified and requested an accommodation;
(3) That the requested accommodation was reasonable, possible and would have allowed Plaintiff Thomas Svendgard to meet the essential eligibility requirements to qualify for a commercial driver’s license', and
(4) That the Defendant Department of Licensing unreasonably refused to provide that accommodation.
Clerk’s Papers at 462 (emphasis added).
In place of the references to the “essential eligibility requirements to qualify for a commercial driver’s license,” Svendgard’s proposed instructions include the following language: “his ability to participate in defendants’ random retesting program,” “excluded his participation in or denied him the benefits of a service, program, or activity,” and “meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.” Clerk’s Papers at 337, 340.
Svendgard’s theory of the case was that he was qualified for the random retesting — in that he had recently obtained his commercial driver’s license based in part on his performance on a skills test administered by a Department- *669 approved third party tester who was a subject of the new auditing program — and that the defendants failed to accommodate his disability so that he could participate in the retesting.[1] Svendgard contends that this is different from the question of whether he was qualified for a commercial driver’s license, because he had already satisfied those requirements and obtained his commercial license. The defendants argue that this is only a nuance and an exercise in circular reasoning because “one of the purposes of the random retesting program was to ensure that [commercial driver’s license] holders are properly qualified to drive commercial vehicles.” Br. of Respondents/Cross-Appellants at 30. Svendgard is correct.
The evidence presented at trial establishes that the essential requirements for obtaining a commercial driver’s license are listed by statute and include passing a knowledge test and a skills test, in addition to state residency and the payment of fees. See RCW 46.25.060. The defendants presented no evidence that the retesting had anything to do with Svendgard’s qualifications, ability, or performance, and no evidence that he was unable to safely operate a commercial vehicle. There also was no evidence that any statute or rule required random retesting after a commercial driver’s license is obtained. And there was no evidence that random retesting was a general requirement for all commercial driver’s license holders. Instead, the evidence established that the retesting program was designed specifically to monitor third party testers, was limited in scope to particular third party testers, was limited to only 10 percent of recently passed commercial driver’s license holders, and was not mandatory — in that Anaya testified that he had allowed at least one other driver to skip the test altogether. Substantial evidence thus established that the random retesting program was a distinct program from the *670 licensing process, that the program was administered by Department of Licensing employees acting with considerable discretion, that the program focused primarily on monitoring third party testers, and that it affected only a limited number of individuals who had already satisfied all the statutory requirements for obtaining a commercial driver’s license.
Svendgard already had a commercial driver’s license, and therefore had satisfied the statutory requirements for obtaining such a license. Svendgard did not claim that the Department discriminated against him when he was applying for his commercial license or during the process of obtaining his commercial license; he claimed that the Department refused to accommodate his disability so that he could take part in the distinct random retesting program — the program in which the Department told him that he must take part or lose his commercial driver’s license. Because this theory is legally viable and the jury instructions did not allow Svendgard to argue this theory, we reverse and remand for a new trial on Svendgard’s WLAD and ADA disability discrimination claims.[2]
Due Process
Svendgard contends that the trial court erred in granting the defendants’ motion for summary judgment on his due process claim. This court reviews a summary judgment order de novo, performing the same inquiry as the trial court. Kruse v. Hemp, 121 Wn.2d 715, 853 P.2d 1373 (1993). The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Kruse, 121 Wn.2d at 722; CR 56(c).
In his complaint, Svendgard claimed:
*671 Plaintiff Thomas Svendgard received two orders from Defendants, State of Washington and its Department of Licensing, directing Plaintiff Thomas Svendgard that he must engage in certain conduct by a certain date or [he] would be deprived of his [commercial driver’s license] and personal driver’s license; and
Plaintiff Thomas Svendgard was not provided with an opportunity for a hearing or other means by which to obtain review of, challenge, or simply be heard on, either the Defendants [’] initial orders, or the Defendants [’] subsequent acts of canceling Plaintiff Thomas Svendgard’s [commercial driver’s license] and personal driver’s license; and
As a direct and proximate cause of Defendants [’] failure to provide Plaintiff Thomas Svendgard with the due process required by both federal and state constitutions, Plaintiff Thomas Svendgard suffered economic and emotional damages in the amounts to be proven at trial.
Clerk’s Papers at 6.
The trial court dismissed Svendgard’s claim that defendants violated his right to due process by canceling his commercial driver’s license without a hearing because the court concluded that the opportunity to participate in the random retesting was all the process that was due. The court relied on Lucero v. Ogden, 718 F.2d 355 (10th Cir. 1983) involving an unsuccessful bar applicant’s claim that due process required a formal hearing before denying bar admission based on a failed exam. But this case is easily distinguished because Svendgard passed his original skills test and the Department of Licensing actually issued him a commercial license. He was not contesting a failed exam. The retesting was not based on a failed skills test or on any allegation that Svendgard had not qualified for a commercial driver’s license when the license was actually issued months before. When the Department sent the letter, it had absolutely no information to indicate that Svendgard was not qualified for his commercial driver’s license. Svendgard’s commercial license had been issued to him based on the skills test administered by a Department-approved third party tester. The Department cancelled *672 Svendgard’s commercial driver’s license because he failed to appear for a random retest within a given time frame. The question is whether Svendgard’s property interest in his commercial driver’s license entitled him to a hearing to determine whether he had a good reason to miss the test, before the Department cancelled the commercial driver’s license.
 “A driver’s license represents an important property interest and cannot be revoked without due process of law.” State v. Dolson, 138 Wn.2d 773, 776-77, 982 P.2d 100 (1999) (citing Bell v. Burson, 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971) (“Once licenses are issued, as in petitioner’s case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.”)). Neither chapter 46.25 RCW nor the general driver’s licensing provisions[3] address the specific issue of the retesting involved here, or the right to a hearing if a commercial driver’s license is suspended for failure to appear for a retest, but both require notice and a hearing in various other situations involving suspension — such as driving under the influence of intoxicants, failure to take a breathalyzer exam, habitual traffic offender situations, and financial responsibility situations. Moreover, state and federal courts agree that administrative revocation of a driver’s license must comply with procedural due process. See, e.g., State v. Storkoff, 133 Wn.2d 523, 527, 946 P.2d 783 (1997); Grannis v. Ordean, 234 U.S. 385, 394, 34 S. Ct. 779, 58 L. Ed. 1363 (1914).
Our Supreme Court recently reaffirmed this principle in City of Redmond v. Moore, 151 Wn.2d 664, 668-71, 91 P.3d 875 (2004). In Moore, the Department of Licensing suspended the licenses of two drivers based on their failures to *673 resolve traffic infraction notices, and pursuant to statute, they were not afforded an administrative hearing before or after the suspension. Id. at 666-68. Because drivers have a substantial property right in their driving privilege, and because the risk of error without a hearing is substantial and outweighs the burden on the State of providing hearings, the court held that the statutes providing for mandatory suspension of driver’s licenses without a hearing violated procedural due process. Id. at 670-77.
Due process requires a hearing that is meaningful and appropriate to the nature of the case. Bell v. Burson, 402 U.S. at 541-42. Here, the Department cancelled Svend-gard’s commercial driver’s license without responding to his request for a hearing. The trial court’s dismissal of his due process claim on summary judgment was error. We reverse, and reinstate the due process claim.
Civil Rights
Svendgard next contends that the trial court erred in granting defendants’ motion for summary judgment on his civil rights claim brought under 42 U.S.C. § 1983. In his complaint, Svendgard stated:
Defendant Anaya knowingly violated Plaintiff Thomas Svendgard’s civil right to be free of discrimination by refusing to accommodate Plaintiff Thomas Svendgard’s reasonable request that his re-testing be rescheduled; and
At the time Defendant Anaya knowingly refused to accommodate Plaintiff Thomas Svendgard, he was acting under the color of his title as “Program Coordinator” for the Defendants, State of Washington and its Department of Licensing; and
As a direct and proximate cause of Defendant Anaya’s abuse of his title and his knowing failure to accommodate Plaintiff Thomas Svendgard’s disability, Plaintiff Thomas Svendgard suffered economic and emotional damages in the amounts to be proven at trial.
Clerk’s Papers at 6-7.
 Aprima facie case under 42 U.S.C. § 1983 requires the plaintiff to show that a person, acting under the color of *674 state law, deprived him of a federal constitutional or state-created property right without due process of law. Mission Springs, Inc. v. City of Spokane, 134 Wn.2d 947, 962, 954 P.2d 250 (1998). But Svendgard cannot recover for violations of ADA rights under § 1983. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) (plaintiff cannot bring an action under 42 U.S.C. § 1983 against a state official in his individual capacity to vindicate rights created by Title II of the ADA or § 504 of the Rehabilitation Act of 1973), cert, denied, sub nom. Hawaii v. Vinson, 537 U.S. 1104 (2003). Svendgard’s civil rights claim was based entirely on his attempt to vindicate his disability discrimination claims. Therefore, the trial court properly granted summary judgment dismissing Svendgard’s § 1983 claim.
Evidence at Trial
Svendgard also contends the trial court erred by excluding testimony regarding licensing laws and regulations. In particular, Svendgard hoped to challenge general testimony from State witnesses that certain procedures during retesting were “within the legal authorities,” by introducing licensing laws and regulations to demonstrate that the Department of Licensing had no authority to conduct the random retesting program. Although the trial court excluded the proposed evidence, it did not actually rule on the legal question of whether the Department had the authority to retest and/or suspend the commercial driver’s licenses of individuals failing to take the retest. Without deciding that issue, we note for the purposes of trial following our remand that a determination of the Department’s authority involves a question of law for the trial court, not a question of fact for the jury.
Cross Appeal
Finally, defendants contend that the trial court erred in denying their motion for summary judgment on the disability claims before trial. But “a denial of summary judgment cannot be appealed following a trial if the denial was based upon a determination that material facts are in dispute and must be resolved by the trier of fact.” Johnson v. Rothstein, 52 Wn. App. 303, 304, 759 P.2d 471 (1988). *675 Here, the trial court denied summary judgment based on its conclusion that issues of material fact remained regarding discrimination, failure to accommodate, and retaliation. Thus, defendants cannot now appeal the denial of summary judgment.
Fee Award
Svendgard requests attorney fees on appeal. We defer any award of attorney fees to Svendgard until the conclusion of a trial on the merits and leave it for the trial court to determine, if Svendgard prevails, the amount due both at trial and on appeal. See McClarty v. Totem Elec., 119 Wn. App. 453, 472-73, 81 P.3d 901 (2003).
CONCLUSION
The judgment is affirmed in part, reversed in part, and the case is remanded for a new trial.
Grosse and Schindler, JJ., concur.

 Contrary to the defendants’ position, the record establishes that plaintiff’s counsel clearly explained this theory and the distinction between qualifying for a commercial driver’s license and successfully participating in a third party tester auditing program months after the Department had issued a commercial license, to the trial court when she objected to the court’s instructions.

 Because these claims will be tried anew, we do not address Svendgard’s other arguments regarding jury instructions or the sufficiency of the evidence supporting the verdict.

 RCW 46.25.005(2) states, “Where this chapter is silent, the general driver licensing provisions apply.”