[No. 36626.   Department Two.   November 21, 1963.]

JESSE L. HAIRE et al., *Respondents*, v. HOWARD E. PATTERSON, *Appellant*.*

*Reported in 386 P. (2d) 953.

*Sterbick, Manza, Moceri & Sterbick,* for appellant.

*Boyle & Boyle* and *Gagliardi & Gagliardi,* for respondents.

POYHONEN, J.†—Respondents instituted this action to compel appellant to perform specifically the terms of a certain earnest money agreement for purchase and sale of ranch property. Respondents are the purchasers named and appellant the seller. From a decree of specific performance requiring the appellant to enter into a contract of sale, this appeal follows.

The earnest money receipt and agreement (Plaintiffs' Exhibit 1) reads in part as follows:

"HAROLD A. ALLEN Co.

"Earnest Money Receipt and Agreement

"Tacoma Wash. DECEMBER 20, 1960

"Received of JESSE L. HAIRE AND FRANCES HAIRE, HUSBAND AND WIFE, the sum of ONE THOUSAND AND No/100 DOLLARS ($1,000.00) in the form of cash, check, or note as earnest money and part payment for the following described real estate situated in the County of PIERCE State of Washington, to-wit: HENRY SMITH DONATION LAND CLAIM IN SECTIONS 26 AND 35, TOWNSHIP 18 N. RANGE 3 E of the W.M., AT ROY, WASHINGTON . . . which we have this day sold to THEM or, THEIR assigns, for the sum of TWENTY THOUSAND AND No/100 DOLLARS ($20,000.00); balance of purchase price to be paid as follows: $5,000.00 DOWN, INCLUDING THE ABOVE EARNEST MONEY, AND THE BALANCE ON A REAL ESTATE CONTRACT PAYABLE AT $150.00, OR MORE, PER MONTH INCLUDING INTEREST AT THE RATE OF 5% ON THE DECLINING BALANCES EACH MONTH.

"Seller agrees to furnish and deliver to purchaser as soon as reasonably procurable a purchaser's policy of title insurance, and seller authorizes agent to apply at once for such policy or report showing condition of title.

---

† Judge Poyhonen is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

"If title is not insurable and cannot be made insurable within 120 days from date of title report, earnest money shall be refunded and all rights of purchaser terminated, except that the purchaser may waive defects and elect to purchase. But if the title is good and purchaser neglects or refuses to complete purchase, the earnest money may at seller's option, be forfeited as liquidated damages.

"The property is to be conveyed by CONTRACT FOR WARRANTY deed, free of encumbrances except————

" . . .

"Encumbrances to be discharged by seller may be paid out of purchase money at date of closing.

" . . .

"Taxes for the current year, rents, insurance, interest, mortgage reserves, water and other utilities constituting liens, shall be prorated as of date of closing.

"Possession to be given UPON CLOSING

" . . .

"There are no verbal or other agreements which modify or affect this agreement.

"Time is of the essence of this agreement.

"HAROLD A. ALLEN Co., Agent     [signed] Jesse L. Haire
                                              Purchaser
"By [signed] Celia S. Herreid     [signed] Frances Haire
                                              Purchaser (Wife)

"We accept and approve this agreement and sale this ————day of DECEMBER, 1960, and hereby agree to pay a commission of TEN (10)% on the amount of said sale to the above Agent for services rendered. In the event the earnest money is forfeited, it shall be apportioned to Seller and Agent equally provided the amount to Agent shall not exceed the agreed commission.

                     [signed] Howard E. Patterson
                                              Seller"

When a contract of sale was tendered to appellant by the realtor on December 27, 1960, appellant refused to sign. The trial court was of the opinion that appellant's reason for refusal was that he had subsequently received a better offer for the property.

Our principal concern is with two questions:

1. Was the trial court correct in requiring appellant to enter into a contract of sale? Our answer: No.

2. Are respondents then entitled to any relief in equity? Our answer: Yes.

The appellant has made 15 assignments of error, challenging the following findings of the trial court: That appellant did sign the earnest money agreement on December 20, 1960; that, at that time and at the time of trial, appellant was competent to comprehend the nature of his actions; that the named consideration was a fair and reasonable price for the property; that there had been a payment of $1,000 earnest money to appellant by deposit of that sum with Harold A. Allen Co.; that the realtor had, in fact, become the agent of the seller; and that neither the respondents nor the realtor was guilty of fraud, misleading statements, undue influence, and overreaching. Error is further assigned to denial of appellant's alternative motions to reconsider, to reopen for further testimony, or for new trial on grounds of newly discovered evidence.

The trial, in January, 1962, was to the court without a jury and lasted 4 days, during which time the court had ample opportunity to observe the appellant. Appellant, then 72 and somewhat senile, testified at some length. He was represented by counsel and also by a guardian ad litem, an attorney. Numerous witnesses, expert and lay, were called. There was much conflicting testimony on many disputed issues of fact. Following the conclusion of the trial, the trial court delivered a lengthy oral decision from which it is clear that careful consideration had been given to all of the evidence and to the contentions of the parties. Suffice it to say that we have examined the record and find substantial evidence to support all findings of the trial court to which error has been assigned, with one exception, that the minds of the parties had met as to the material terms of a future contract of sale called for in the earnest money agreement. The trial court further stated in the oral opinion (this was not specifically incorporated into the formal findings of fact) that appellant refused to sign the tendered contract because of a better offer for the property and that appellant's contention that he was to have a right of occupancy of a small house on the property after sale of the ranch to the respondents was an afterthought.

■ The trial court's findings, when supported by substantial evidence, must stand. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183, and cases therein cited.

One of the briefs suggests that this suit, being of equitable cognizance, is to be tried in this court de novo, and that this court shall determine the preponderance of the evidence. This is not the law. Since January 2, 1951, there has been no distinction in this court in the method of review between equity and law cases. Rule of Pleading, Practice and Procedure 52.04W; Rule on Appeal 43; *Hubbell v. Ward*, 40 Wn. (2d) 779, 246 P. (2d) 468.

■ The motion to reopen or to grant a new trial was one addressed to the sound discretion of the trial court, and we find no abuse of discretion. The newly discovered evidence would have been an evaluation of appellant's competence by a psychiatrist and neurologist, Dr. Myron Kass of Tacoma, based upon an examination on February 2, 1962, 2 weeks after trial. Counsel states that he endeavored to persuade appellant to submit to a psychiatric examination prior to trial, but appellant would not consent until after he had lost the case. Dr. Kass would have expressed an opinion as to appellant's condition on February 2, 1962, and what that condition "in all probability" was in December, 1960. It would have been cumulative. We find no error in denial of the motion.

■ The trial court's decree requiring appellant to enter into and perform a contract of sale cannot be sustained. *Hubbell v. Ward, supra*, decided in 1952 and not since departed from, is controlling.

The trial court felt that appellant acted in bad faith. We would affirm and require appellant to enter into a contract of sale with respondents, if it were possible from the record to determine that the parties had, as to the provisions of the sale contract, ever come to terms. Specific performance connotes "performance specifically as agreed." Where the parties have not reached agreement, there is nothing for equity to enforce.

The contract imposed upon the appellant by the decree (almost identical to that tendered appellant on December 27, 1960) calls for a down payment of $7,000 and contains provisions relating to payment of taxes and insurance premiums during the life of the contract, forfeiture rights, increased interest in certain contingencies, manner of payments on an existing mortgage, obligations of the parties in the event the premises or a part thereof are taken for public use, and so forth. It is inherent in the court's decree that the court must have found that the parties had, in fact, agreed upon these very terms to be embodied in their future contract. There is no evidence in the record to support such a finding. That these very provisions were to be embodied in a future contract of sale cannot be ascertained from the face of the earnest money document. And there is no other evidence in the record, written or parol, from which it is possible to make such a finding.

Respondents seek to sustain the decree on the ground that the contract imposed upon the appellant is more favorable to him than might have been expected. Whether it is or not is of no moment. It is unthinkable that courts should undertake the writing of contracts for sellers and buyers who have failed or refused, rightly or wrongly, to come to terms between themselves. Such a course could seriously impair the right of free alienation of property.

Restatement, Contracts § 370, p. 464: "Specific enforcement will not be decreed unless the terms of the contract are so expressed that the court can determine with reasonable certainty what is the duty of each party and the conditions under which performance is due."

49 Am. Jur. § 25, p. 38: "For specific performance is demanded that degree of certainty and definiteness which leaves in the mind of the court no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is to compel to be done. The element of completeness denotes that the contract embraces all material terms; that of certainty denotes that each one of these terms is expressed in a sufficiently exact and definite manner. . . ."

It has been said that real estate contracts have become so standardized that, when parties enter into an earnest

money agreement calling for a future contract, they must be held to have had in mind the provisions of a "standard" contract of sale. We know of no "standard" contract. However, if parties have a particular contract form in mind, it seems that they could evidence that fact by attaching a copy thereof to the earnest money receipt and making it a part thereof by reference, and we are aware of such a practice. We note the existence of printed earnest money agreement forms providing that the contract to follow shall be on a particular form, identified by number, publisher, and date of printing. And it would not seem an impossibility to prepare an earnest money agreement, printed or otherwise, containing within its four corners the material terms of the future contract of sale.

█ The earnest money agreement, considered in its entirety, contains all of the ingredients necessary for a cash sale. The buyers are granted the option to pay the full consideration at any time, and the seller is obligated to accept the same. The seller has agreed to convey a merchantable title by "warranty deed, free of encumbrances, except ————" (No exceptions noted). The buyers may waive defects in title and elect to purchase subject to them. Encumbrances may be paid out of the purchase money at time of closing sale. The preliminary title report showed the property subject to the lien of a mortgage to Federal Land Bank with an unpaid balance of about $888.29, a second mortgage to secure an indebtedness in the original amount of $646.07, and a judgment for $55.05, plus interest and costs. It further disclosed the existence of an easement for travel and utility lines over a strip 16 feet in width, and an oil, gas, and mineral lease entered into in 1959 for a 10-year term with Humble Oil & Refining Company. We conclude that, if the respondents desire the property at this time for $20,000 in cash and are willing to accept title subject to the foregoing easement and oil and gas lease, they are entitled to have it.

The cause is remanded to the trial court with instructions to modify the judgment upon the going down of the remittitur by eliminating therefrom everything after the

first paragraph ending with the words, "Now Therefore," and by inserting in lieu thereof the following:

"It is hereby ordered, adjudged and decreed that, in the event that within 30 days from the date hereof plaintiffs shall pay into the registry of this court the sum of Twenty Thousand Dollars ($20,000), which sum shall be subject to the further order of the court, and shall notify defendant in writing of such deposit and of their election to accept title subject to the easement for travel and utility lines, and the oil and gas lease to Humble Oil & Refining Company, then the defendant is hereby directed to carry out and perform all acts necessary to effect a sale of the property described in Plaintiffs' Exhibit 1 in accordance with the terms thereof in the same manner as though the plaintiffs had elected to pay the entire consideration in cash. The said Exhibit 1 shall be considered as having been executed on the date on which plaintiffs shall notify defendant of their having made the aforesaid deposit into the registry of the court, and the time for the performance of the various acts required of the parties in said Exhibit 1 shall commence to run from said date. Upon the complete performance by the plaintiffs and the defendant of all acts necessary to consummate said sale, the court shall enter such further order relative to the deposit in the registry of the court as may appear equitable.

"In the event that plaintiffs shall fail within said period of 30 days to make such deposit and notify defendant thereof, this action shall be dismissed with prejudice upon motion of defendant.

"The court hereby retains jurisdiction of this cause for the purpose of making such orders from time to time as the court may deem necessary and proper to make effective and to complete the specific performance of any and all acts required by this decree."

As so modified, the judgment is hereby affirmed.

Neither party shall recover costs on this appeal.

OTT, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur